**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 09-1076**

—————————

In Re:  FIRSTPAY, INCORPORATED,

                Debtor.

-----------------------------

UNITED STATES OF AMERICA,

                Plaintiff - Appellant,

        v.

MICHAEL G. WOLFF, Trustee,

                Defendant - Appellee.

—————————

**No. 09-1107**

—————————

In Re:  FIRSTPAY, INCORPORATED,

                Debtor.

-----------------------------

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

        v.

MICHAEL G. WOLFF, Trustee,

                Defendant - Appellant.

Appeals from the United States District Court for the District of Maryland, at Greenbelt. Peter J. Messitte, Senior District Judge. (8:08-cv-00801-PJM; BK-03-30102-PM; AP-05-01695)

Argued: March 25, 2010          Decided: August 13, 2010

Before MICHAEL and DAVIS, Circuit Judges, and James A. BEATY, Jr., Chief United States District Judge for the Middle District of North Carolina, sitting by designation.

No. 09-1076 affirmed in part and vacated and remanded in part; No. 09-1107 affirmed by unpublished per curiam opinion.

**ARGUED:** Ivan C. Dale, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant/Cross-Appellee. Jeffrey Mitchell Orenstein, GOREN, WOLFF & ORENSTEIN, LLC, Rockville, Maryland, for Appellee/Cross-Appellant. **ON BRIEF:** John A. DiCicco, Acting Assistant Attorney General, Michael J. Haungs, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellant/Cross-Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In these consolidated appeals, the United States ("the Government") and Michael G. Wolff, Trustee of the bankruptcy estate of debtor FirstPay, Inc. ("the Trustee"), seek review of interlocutory and final orders of the United States District Court for the District of Maryland, which exercised appellate jurisdiction over two orders of the United States Bankruptcy Court for the District of Maryland.

FirstPay, Inc. ("FirstPay" or "Debtor"), operated a payroll and tax service company. The bankruptcy court adjudicated a nine-count complaint filed in an adversary proceeding by the Trustee against the Government. In his complaint, the Trustee sought, inter alia, avoidance of alleged preferences and alleged fraudulent conveyances amounting to hundreds of millions of dollars in payments to the Internal Revenue Service ("IRS") FirstPay made on behalf of its clients. The Government prevailed before the bankruptcy court, on summary judgment as to three counts, and after a trial on the remaining six counts. Upon an initial appeal to the district court, the judgment of the bankruptcy court was affirmed in (substantial) part and vacated in part, and the case was remanded for further proceedings as to two claims. Upon the bankruptcy court's consideration of the remanded claims, the bankruptcy court, deeming itself constrained by the order of the district court, granted summary

3

judgment in favor of the Trustee on one of the preference claims. Upon the Government's subsequent appeal, the district court affirmed.

Before us, the parties challenge virtually each and every one of the findings of fact and legal conclusions reached by the courts below. For the reasons set forth within, in the Government's appeal, No. 09-1076, we agree with the Government that the district court erred in finding that it was "undisputed that the transfer of funds from the Debtor to the IRS . . . was a transfer of an interest of the Debtor in property" under 11 U.S.C. § 547(b), a threshold requirement for finding a preference. We also conclude that the bankruptcy court abused its discretion in declining to consider the Government's "ordinary course of business" affirmative defense allowed under 11 U.S.C. § 547(c), notwithstanding the Government's failure to plead the defense in its answer to the complaint. Accordingly, we vacate the judgment and remand the case for further proceedings before the bankruptcy court as to the Trustee's preference claim. In the Trustee's cross appeal, No. 09-1107, we affirm the challenged rulings, substantially on the reasoning of the lower courts.

## I.

### A.

FirstPay operated a payroll services business. As a payroll services company, FirstPay prepared and processed its clients' employee payroll checks and in addition, for a significant percentage of its clients, it also calculated, reported, and paid to the IRS on its clients' behalf the associated payroll taxes and withholdings. As to this latter group of clients, FirstPay would generally enter into a so-called Tax Reporting Services Agreement ("TRSA"), which set forth FirstPay's basic duties and some minor operational detail. The TRSA provided in part as follows:

> [1] Client's checking account shall be debited for the aggregate total of all taxes and unemployment insurance due, and credited to FIRSTPAY, Inc. a minimum of three days prior to payroll date. This is in addition to any funds withdrawn for payment of employees. Client agrees to have such funds available at that time.
> [2] These tax funds will be held by FIRSTPAY, Inc. until such taxes are due, and will be submitted by FIRSTPAY, Inc. in accordance with local, state and federal regulations.
> [3] Client authorizes FIRSTPAY, Inc. to hold Limited Power of Attorney to sign and send timely all obligations and signed forms to appropriate governments and banks, and [sic, as] required or as requested by FIRSTPAY, Inc.

J.A. 147.

FirstPay's clients would sign their tax returns and deliver them to FirstPay for filing with the IRS. Client funds

representing the gross amount of employee pay, plus the client/employer's shares of withholding and other taxes, were initially credited electronically to a FirstPay bank account, which the parties refer as the "tax account" or the "tax pay account." With such funds in hand, FirstPay was supposed to remit periodic pay checks to the clients' employees in the net amount of their pay after appropriate withholding and then, by regular wire transfer (perhaps among other methods) pay the taxes due and owing out of the tax account to the appropriate federal, state and local taxing authorities. The Trustee estimated that FirstPay transferred by wire more than $300 million from the tax account to the IRS within the three years preceding FirstPay's bankruptcy, of which $28 million was transferred in the 90 days preceding the filing of the bankruptcy petition.

Sadly for many of FirstPay's clients, not all of the client funds credited to the FirstPay tax account were used for the purposes the clients intended. FirstPay transferred some of the funds to its operating account (using such funds to pay its own business expenses) and it transferred some of the funds into a so-called exchange and reimbursement account, from which FirstPay's principals made lavish personal expenditures in connection with a massive, years-long, fraud scheme. In consequence of this misappropriation of client funds, FirstPay

6

failed to pay over to the IRS a substantial portion (apparently more than $5 million) of its clients' taxes that were due and owing. Seemingly, it is undisputed that during the execution of the scheme, FirstPay would use funds it received from one or more clients to pay the tax obligations of one or more other clients (thus the Trustee's label: "Ponzi Scheme"). In other words, it would use later-acquired client-provided funds to pay earlier-accrued tax obligations of other clients.

The fraud scheme continued undetected for several years at least in part because, although the IRS sent notices of non-payment to FirstPay's clients, the clients did not receive the notices. The clients did not receive the notices because FirstPay (clearly as part of the fraud scheme) had changed the addresses on the tax returns submitted by FirstPay on behalf of its clients from its clients' addresses to its own address. Thus, the IRS mailed the notices of non-payment to FirstPay (using the altered addresses on the tax returns) rather than to the client/taxpayers.

The fraud scheme unraveled in March 2003 when a FirstPay principal (the architect of the fraud scheme) died while boating in the British Virgin Islands. After his death, the Criminal Investigation Division of the IRS and the Federal Bureau of Investigation opened parallel investigations. In due course, investigators executed search and seizure warrants at FirstPay's

7

premises, seizing voluminous records and shutting down its operations. Meanwhile, the IRS undertook to pursue the collection of unpaid taxes from some of FirstPay's clients, many of which were small businesses, professional corporations, and non-profits. It is undisputed that many FirstPay clients that were contacted by the IRS for payment had remitted funds to FirstPay for the purpose of satisfying their tax obligations.

B.

Creditors filed an involuntary Chapter 7 bankruptcy petition against FirstPay in the United States Bankruptcy Court for the District of Maryland in May 2003, and Michael Wolff was appointed Trustee of the bankruptcy estate. Some of FirstPay's former clients filed Proofs of Claim against the bankruptcy estate, prompted by the Government's efforts to collect taxes from them that they had already remitted to FirstPay but which remained unpaid.

On June 24, 2005, in an effort to forestall the growing number and magnitude of claims filed against the bankruptcy estate or, in the alternative, to recover funds from the Government with which to pay any allowed claims, the Trustee filed a nine-count complaint in the bankruptcy court against the

8

United States.[1] The Trustee asserted the following specific claims: (1) for a declaratory judgment that the United States has no claim for taxes, interest or penalties against FirstPay clients whose payroll taxes were paid to FirstPay but not remitted to the United States (Count I); (2) avoidance of preferences under 11 U.S.C. § 547(b)(4)(A) and (B), i.e., FirstPay's payments of its clients' payroll taxes to the IRS (Counts II and III);[2] (3) avoidance as fraudulent conveyances

---

[1] At trial before the bankruptcy court, the Trustee's counsel candidly admitted that he really did not wish to recover funds from the Government, as that would likely create more problems than it would solve:

> The reality, Your Honor, is that the Trustee, although he was compelled to file this action and prosecute it, really doesn't want the money back, which would then require the IRS to go through the administrative nightmare of debiting the accounts of taxpayers whose accounts have been paid, sending the money back to the Trustee, the Trustee then dividing the money among all the claimants, and then the IRS going out and reassessing.

J.A. 283. Thus, the Trustee has vigorously pursued his ostensible declaratory judgment action.

[2] Section 547(b) provides as follows:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property-
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made-
> (A) on or within 90 days before the date of the filing of the petition; or

(Continued)

9

under 11 U.S.C. § 548 and Maryland law, of such payments (Counts IV, V, VI, VII, and VIII); and (4) turnover of preferences and/or avoided transfers under 11 U.S.C. § 550 (Count IX). In total, the Trustee sought to recover for the benefit of FirstPay's estate $338 million in client funds that FirstPay allegedly remitted to the IRS in the three years preceding the bankruptcy filing. The Trustee did not join as parties any of FirstPay's former clients. Rather, the Trustee's theory rested on his assertion that the United States was a creditor of FirstPay and that the transfers to the IRS were to pay FirstPay debts to the Government. The Government filed an answer denying the essential facts relied on by the Trustee but asserting no affirmative defenses under 11 U.S.C. § 547(c).

---

    (B) between ninety days and one year before the date
    of the filing of the petition, if such creditor at the
    time of such transfer was an insider; and
    (5) that enables such creditor to receive more than
    such creditor would receive if-
    (A) the case were a case under chapter 7 of this
    title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the
    extent provided by the provisions of this title.

11 U.S.C. § 547(b). Congress' recent amendment of the time period in subsection (b)(4)(B) from one year to two years is not applicable in this case.

10

Before the completion of discovery, and with the trial date on the horizon, the Government moved for summary judgment.[3] The Trustee opposed the motion on the merits, including the Government's invocation of the "ordinary course of business" affirmative defense under 11 U.S.C. § 547(c)(2). On August 2, 2006, after a hearing, the bankruptcy court granted (but reserved until after trial its explanation for granting) the Government's motion for summary judgment as to Counts I, II, and III, i.e., the declaratory judgment and preference claims. The court denied the motion as to, and scheduled a trial for August 9, 2006 on, the fraudulent conveyance claims. Following a one day trial, by memorandum and order filed on August 17, 2006, the bankruptcy court explained its reasons for granting summary judgment on the declaratory judgment and preference claims, and it further found and concluded that the Trustee had failed to

---

[3] The Government argued that the bankruptcy court lacked jurisdiction to hear the Trustee's request for declaratory relief; that the Trustee failed to state a claim for avoidance of a fraudulent conveyance and that, in any event, the Trustee's state law fraudulent conveyance claims were barred by the "voluntary payment" doctrine under Maryland law. With respect to the Trustee's preference claims (Counts II and III), the Government argued, inter alia, that (1) the Trustee could not, as a matter of law, meet the requirements of 11 U.S.C. § 547(b)(1) and (b)(2) because (1) the United States was not a "creditor" of FirstPay and the remission of client taxes was not "on account of an antecedent debt owed by" FirstPay; and (2) in any event, the relevant transfers were "made in the ordinary course of business" and could not be avoided under 11 U.S.C. § 547(c)(2).

establish his fraudulent conveyance claims. See In re FirstPay, 2006 WL 2959342 (Bankr. D.Md. Aug. 17, 2006).

The bankruptcy court reasoned as follows. First, the court concluded that it lacked jurisdiction to grant declaratory relief as to the federal tax liability of FirstPay's former clients because 11 U.S.C. § 505(a) "does not extend the bankruptcy court's jurisdiction to parties other than the debtor." Id. at *2. Second, the transfers made by FirstPay to the IRS were not recoverable under 11 U.S.C. § 547(b) as preferences because: (1) the Government is not a creditor of FirstPay, but rather a creditor of FirstPay's former clients; (2) "the transfers alleged by [FirstPay] were not made for an antecedent debt[] owed by [FirstPay]"; and (3) the Government is not an "insider" as defined in 11 U.S.C. § 101(31) (as to the claim under 11 U.S.C. § 547(b)(4)(B)). Id.

Third, the transfers made by FirstPay to the IRS were not recoverable as fraudulent conveyances under 11 U.S.C. § 548 or under the Maryland Uniform Fraudulent Conveyance Act. This was so, the court found, because, as to the former, FirstPay received "reasonably equivalent value" in consideration of the transfers made to the IRS on behalf of its clients, i.e., discharge of FirstPay's responsibility to account for said funds to its clients. As to the latter, such "claims are barred by the 'voluntary payment' doctrine under Maryland law, which prohibits

12

recovery of a tax paid voluntarily, absent a special statutory provision authorizing a refund." Id. at*3-*4. In light of these findings and conclusions, the derivative turnover claim brought pursuant to 11 U.S.C. § 550 was moot. The court entered judgment of dismissal in favor of the Government.

The Trustee filed a timely appeal to the district court. After briefing and oral argument, the district court affirmed in part and vacated in part the order of the bankruptcy court. Wolff v. United States, 372 B.R. 244 (D.Md. 2007). Specifically, the district court affirmed the dismissal of the declaratory judgment claim, one of the preference claims, and all of the fraudulent conveyance claims. As to the claim for a declaratory judgment the district court reasoned that (1) the Trustee lacked standing to assert a claim against the Government on behalf of FirstPay's clients and (2) "section 505(a) does not extend the bankruptcy court's jurisdiction to parties other than the debtor." Id. at 249-51. As to the fraudulent transfer claims, the court reasoned that those claims failed because: (1) the Trustee offered no evidence of an intent to defraud in respect to those payments to the IRS; (2) although FirstPay was insolvent when it made the transfers to the IRS, FirstPay did not receive less than a reasonably equivalent value for same; and (3) pursuant to the Maryland Uniform Fraudulent Conveyance

13

Act, the Trustee was barred on this claim by the "voluntary payment doctrine." Id. at 253-55.

As to the two preferential transfer claims, the district court reached a split decision. Id. at 251-53. First, the district court agreed with the bankruptcy court that, as a matter of law, the Government was not an "insider." Thus, the preference claim under 11 U.S.C. § 547(b)(4)(B) failed. Second, the district court rejected the reasoning of the bankruptcy court as to the preference claim under 11 U.S.C. § 547(b)(4)(A), however, and vacated the dismissal of that claim and remanded.

The district court reasoned as follows in concluding that the bankruptcy court had erred in dismissing the § 547(b)(4)(A) preference claim. First, the court found: "It is undisputed that the transfer of funds from the Debtor to the IRS . . . was a transfer of an interest of the Debtor in property" and that Debtor was insolvent at the time [i.e., within 90 days of bankruptcy] of the transfers. Id. at 251. This finding satisfied the threshold requirement of the § 547(b)(4)(A) preference claim (transfer of an "interest of the debtor in property") as well as subsections (b)(3) ("insolvency") and (b)(4)(A)(the "90-day lookback"). Second, the court found that, as the Government was not a creditor of FirstPay, the Government "had received more than it would have received in a distribution under chapter 7." Thus, the court found that the requirement of subsection (b)(5)

14

was satisfied. The court then evaluated whether the remaining elements of the claim (subsections (b)(1) and (b)(2)) had been (or could be) established.

As to subsection (b)(1), the court reasoned that the transfers to the IRS had not been "to a creditor," for, despite the Trustee's vigorous contention to the contrary, the bankruptcy court had so found and the district court affirmed that finding. Nevertheless, the district court observed, the bankruptcy court had failed to consider whether the transfers to the IRS had been "for the benefit of a creditor." The court concluded that this element could be satisfied if FirstPay's clients enjoyed a creditor/debtor relationship with FirstPay (as opposed to, say, merely contracting parties). The district court concluded that they did have such a relationship because "each time the Debtor received payments intended for the IRS from a particular client, a creditor/debtor relationship was created . . . . And when the Debtor subsequently paid over some of the client funds to the IRS by reason of its obligation to its client, the client's obligation to the IRS was simultaneously satisfied." "Thus, the Debtor's payment to the IRS became a payment 'for the benefit of a creditor,'" satisfying subsection (b)(1). Id. at 252.

As to subsection (b)(2), the district court concluded that "'the antecedent debt' referred to in [that subsection] can be

15

located in the Debtor's debts to its taxpayer clients." Id. Thus, the district court held that the "creditor" contemplated in subsection (b)(1) need not be the same "creditor" mentioned in subsection (b)(5); that FirstPay's payments to the IRS pursuant to the TRSA for the benefit of its clients (or at least some of the payments for some of the clients) were made "on account of an antecedent debt owed by the debtor," such that summary judgment in favor of the United States as to payments made within 90 days prior to the filing of the bankruptcy petition was erroneous. The district court remanded the case to the bankruptcy court "for further proceedings not inconsistent with" its opinion. Id. at 255.[4]

On remand, the bankruptcy court granted the Trustee's motion for summary judgment in a summary order, entering judgment against the Government for $28 million plus interest. The Government moved to alter or amend the judgment. On March 6, 2008, the bankruptcy court filed a memorandum and order denying the Government's motion to alter or amend. In re Firstpay, Inc., 2008 WL 687027 (Bankr. D.Md. Mar. 06, 2008). In denying the

---

[4] The Government timely appealed, and the Trustee cross-appealed the district court's order to this court, but upon the Government's motion, we dismissed the appeals for lack of a final appealable judgment.

16

motion to alter or amend, the bankruptcy court explained the basis for its summary judgment in favor of the Trustee.

Plainly, the bankruptcy court was constrained by the "mandate rule" to hew closely to the determinations the district court had reached on its review of the bankruptcy court's prior judgment in favor of the Government. Id. at *2. The bankruptcy court interpreted the district court's reasoning as follows:

> As described by the District Court, Firstpay's modus operandi was to deposit all of its clients' money into a single fund, with occasional payments to the IRS to satisfy or partially satisfy clients' outstanding tax obligations. Money paid by one client was used to pay the liabilities of a different client . . . . On appeal, the District Court noted this court's error in its holding that because the IRS was not a creditor of the Debtor that a preference action would not lie in this case. This court overlooked the fact that the transfers in question were for the benefit of other creditor entities; namely, those of the Debtor's clients who were fortunate enough to have a portion of their obligations transmitted to the IRS, thereby satisfying all or part of those clients' obligations. In a nutshell, as the District Court stated, the Debtor's payments to the IRS were made "for the benefit a creditor" and were made "on account of an antecedent debt owed by the debtor." Id. at 252.

Id. at *2-*3. In short, the court concluded, "as noted by the District Court, the Trustee established each and every element of a preference claim under § 547(b) as to all transfers to the IRS made within 90 days before the filing of the petition." Id. at 3 (emphasis added). The court denied the motion to alter or amend.

17

The Government timely appealed to the district court the grant of summary judgment to the Trustee and the denial of the Government's motion to alter or amend. The Trustee took what he says was a protective cross-appeal from the prior adverse rulings of both the bankruptcy court and the district court (so that he could bring all such rulings before us should he elect to do so). On November 10, 2008, after entertaining oral argument, the district court affirmed the bankruptcy court in a summary order. The instant cross-appeals followed.

## II.

Summary judgment is only appropriate when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. In re Apex Express Corp., 190 F.3d 624, 633 (4th Cir. 1999) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)); see Fed. R. Civ. Proc. 56(c); see also Fed. R. Bankr. P. 7056. This court reviews de novo a bankruptcy court's award of summary judgment and a district court's affirmance thereof. In re French, 499 F.3d 345, 351 (4th Cir. 2007) (citing In re Ballard, 65 F.3d 367, 370 (4th Cir. 1995)).

18

III.

The parties raise a host of issues. We are persuaded that further proceedings must be conducted by the bankruptcy court in respect to the 90-day preference claim. We conclude first that the district court saddled the Government with a concession, that FirstPay had transferred its own interest in property when it made payments to the IRS, that is not borne out by the record. In connection with that issue, we instruct the bankruptcy court to reconsider the facts and the law, without regard to any such concession. Second, we are persuaded that the bankruptcy court abused its discretion in refusing to permit the Government to advance its "ordinary course of business" affirmative defense. In all other respects, we affirm the judgment of the district court.

A.

The Government principally contends that the district court committed an error of law in concluding that "it is undisputed that the transfer of funds from the Debtor to the IRS in this case was a transfer of an interest of the Debtor in property." We agree. Contrary to the district court's finding, which severely constrained the bankruptcy court on remand, the Government has made quite clear throughout the litigation that it made no such concession. J.A. 171, 288. As the Government suggests, there are many moving parts to this litigation; it did

19

not feel obliged to raise every possible issue in response to the claims asserted against it and it did not.

The Trustee's response that the Government adduced "no evidence" at trial to support the Government's assertion that FirstPay did not transfer property in which it had an interest misses the mark.[5] Owing to the unusual procedural course followed in this case, including the pretermission of discovery by agreement of the parties and the fact that the precise issue was never squarely presented to the bankruptcy court during its consideration of the Government's motion for summary judgment or at trial, it simply has not been presented as a factual issue or an appropriately-framed legal issue.[6] Once the district court

---

[5] The Trustee apparently relies on the Government's failure to deny one or more of the Requests for Admissions he served on the Government during the truncated period of discovery. We have examined that issue closely and we are satisfied that even if the requests are deemed admitted, as the bankruptcy court determined during trial, the admissions by themselves fall far short of establishing that the Government conceded that FirstPay's transfers to the IRS "was a transfer of an interest of the Debtor in property" as the district court found, or that there is no genuine dispute of material fact. Certainly, the bankruptcy court never made such a finding. Whether and the extent to which FirstPay enjoyed a cognizable interest in any one or more of the transfers it made to the IRS during the 90-day lookback will likely require extensive proceedings in discovery.

[6] The bankruptcy court had before it at the time of trial the Trustee's motion to compel discovery, but it appears that it never ruled on the motion. Yet, it further appears that the Government (which the courts below criticized for what they seemed to have regarded as exaggerated claims of confidentiality (Continued)

20

erroneously deemed the Government to have conceded the issue, the bankruptcy court felt itself bound by the district court "mandate." Manifestly, genuine disputes of material fact surround the issue of whether, and if so how many and what portion of, any of the numerous transfers by FirstPay to the IRS may be preferences. Cf. In re Fulghum Constr. Corp., 706 F.2d 171 (6th Cir. 1983) ("Section 547(b) deliberately defines a preference as a 'transfer', rather than as an aggregate of transfers.").

In any event, it is the Trustee's burden to prove a preference, including the threshold requirement of whether the debtor transferred property in which it enjoyed an interest. See 11 U.S.C. § 547(g) ("For the purposes of [section 547], the trustee has the burden of proving the avoidability of a transfer under subsection (b)."). Thus, we conclude that the judgment in favor of the Trustee must be vacated.

B.

"Equality of distribution among creditors is a central policy of the [preference provisions of the] Bankruptcy Code.

---

as to taxpayer information) may have been sanctioned sub silentio. On remand, discovery practice should follow a more orderly course and, if indeed, the Government is deserving of sanction, same should be imposed transparently. All that said, we indicate no view on how the bankruptcy court should manage discovery in this unusual case.

21

According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property." Begier v. I.R.S., 496 U.S. 53, 58 (1990) (citations omitted; alteration added). The Government contends here that it was not a creditor of FirstPay and that the funds it received from FirstPay comprised the property of FirstPay's clients, not FirstPay's property.

In Begier, the Court noted that "[t]he Bankruptcy Code does not define [the term] 'property of the debtor.'" Id. Thus, it drew on "[11 U.S.C.] § 541, which delineates the scope of 'property of the estate' and serves as the postpetition analog to § 547(b)'s 'property of the debtor.'" Id. at 59. Under 11 U.S.C. § 541(a)(1), the commencement of a bankruptcy action creates an estate, "comprised of all legal or equitable interests of the debtor in property as of the commencement of the case." However, "[p]roperty in which the debtor holds . . . only legal title and not an equitable interest . . . becomes property of the estate under subsection [§ 541](a)(1) . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). Ultimately, the Court concluded that the funds at issue (withheld FICA, income and excise taxes paid or held for payment by American International Airlines, Inc. ("AIA") to the IRS) were held in

22

trust for the Government. Id. at 60-67. The Court held that "AIA's payments of trust-fund taxes to the IRS from its general accounts were not transfers of 'property of the debtor,' but were instead transfers of property held in trust for the Government." Id. at 67. Accordingly, the payments could not be avoided as preferences. Id. Relatedly, in a case closely analogous to the case before us, involving a tax service company, the First Circuit stated that "[t]he plain text of § 541(d) excludes property from the estate where the bankrupt entity is only a delivery vehicle and lacks any equitable interest in the property it delivers." City of Springfield v. Ostrander (In re LAN Tamers, Inc.), 329 F.3d 204, 210 (1st Cir. 2003) (citation omitted).

In its March 6, 2008 memorandum and order denying the Government's motion to alter or amend the bankruptcy court's summary judgment in favor of the Trustee, the bankruptcy court distinguished Begier on the grounds that it "involved payment of withholding taxes by the employer from its general account, not, as here, payments by a third party," and because "FirstPay is not the person required to collect or withhold and to pay over the tax." We think the bankruptcy court, now freed of the district court mandate that constrained its earlier assessment

of the remaining preference claim, will want to take another, closer look at this issue.[7]

C.

In denying the Government's motion to alter or amend the judgment, the bankruptcy court stated that "the IRS neither pleaded nor proved any of the affirmative defenses to a preference action set out in § 547(c)," and thus refused to consider the "ordinary course of business" defense on the ground that "[e]ven if such defenses existed, they were waived by not being pled in the answer." The Government contends that the bankruptcy court abused its discretion in summarily refusing to consider the Government's belated assertion of the "ordinary course of business" defense under 11 U.S.C. § 547(c)(2). We agree.

Of course, "[i]n responding to a pleading, a party must affirmatively state any . . . affirmative defense." Fed. R. Civ. P. 8(c). When a party fails to assert an affirmative defense in the appropriate pleading, such a failure will sometimes result in a binding waiver. Emergency One, Inc. v. American Fire Eagle

---

[7] FirstPay's clients were subject to the same withholding requirements as was AIA; they simply contracted with a payroll service provider to calculate and withhold employee taxes for them. Whether FirstPay converted and misappropriated some of its clients' funds in order to make payments to the IRS on behalf of other clients, among other issues, will have to be determined by the bankruptcy court in the first instance.

Engine Co., Inc., 332 F.3d 264, 271 (4th Cir. 2003) (citation omitted). Nevertheless, we have observed that where there is a waiver, it "should not be effective unless the failure to plead resulted in unfair surprise or prejudice." S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co., 353 F.3d 367, 373 (4th Cir. 2003). Our longstanding approach to liberal amendment of pleadings in the absence of undue prejudice, see Laber v. Harvey, 438 F.3d 404, 426-29 (4th Cir. 2006) (en banc) (finding abuse of discretion in denial of leave to amend complaint), applies equally to amendments to assert affirmative defenses. E.g., IGEN Int'l, Inc. v. Roche Diagnostics GmbH, 335 F.3d 303, 311 (4th Cir. 2003) (citations omitted).

We can discern no undue prejudice to the Trustee from allowing the Government to amend its answer to assert its affirmative defense. Here, there was no prejudice or unfair surprise to the Trustee when the Government raised the "ordinary course of business" defense in its motion for summary judgment. In fact, the Trustee did not object to the Government's assertion of the defense in a dispositive motion or otherwise claim that it was waived because it was not included as an affirmative defense in the Government's answer. Rather, the Trustee disputed the Government's argument on its merits. And even though it was not part of the bankruptcy court's original decision, the Government again raised the ordinary course

25

defense in its brief on the first appeal to the district court and again without objection from the Trustee. Thus, we remand for a determination regarding the merits of the Government's "ordinary course of business" defense.

## D.

In its cross-appeal, the Trustee takes aim at the adverse rulings of the lower courts dismissing counts I and counts III through VIII of his complaint. Having had the benefit of full briefing and oral argument, and having carefully examined the Trustee's assignments of error and found them to lack merit, we affirm the orders dismissing such claims, substantially for the reasons stated in the opinions of the lower courts. Wolff v. United States, 372 B.R. 244 (D.Md. 2007), aff'g in part and rev'g in part, In re Firstpay, 2006 WL 2959342 (Bankr. D.Md. Aug. 17, 2006).

## IV.

For the reasons set forth above, we affirm in part and vacate in part the orders under review. We remand this action for further proceedings in conformity with the views expressed herein.

No. 09-1076 AFFIRMED IN PART AND
VACATED AND REMANDED IN PART
No. 09-1107 AFFIRMED

26