## MacBRYDE (WINDER, Intervener) v. BURNETT et al.

### No. 4996.

Circuit Court of Appeals, Fourth Circuit.

Dec. 30, 1942.

James Morfit Mullen and R. Contee Rose, both of Baltimore, Md., for appellants.

Vernon Cook and Hilary W. Gans, both of Baltimore, Md., for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

These are consolidated appeals in a suit to charge as trustee one Paul M. Burnett, hereafter referred to as the defendant, who under agreement with one Sara J. Parker handled a fund devised to her for life with power of appointment. The facts are complicated but are fully set forth in the opinion of the lower court. See MacBryde v. Burnett, D.C., 44 F.Supp. 833. The District Judge found that a trust existed, charged the defendant with the amount of funds used in the purchase of certain stocks, with interest thereon, and refused to allow commissions. He denied the claims of plaintiffs, however, with respect to profits realized by defendant on purchases of stock in a life insurance company and with respect to the alleged conversion of stock of the United States Fidelity and Guaranty Company belonging to the trust, and plaintiffs have appealed. Only the two matters last mentioned are involved in the appeals.

In 1921 defendant was appointed administrator d. b. n. c. t. a. of the estate of Mary Donaldson, who gave a life estate with power of appointment to Sara J. Parker in a fund of $10,000, which because of a deficiency of assets was reduced to $7,739.65. Defendant, in due course, filed an account showing the payment of this fund to the life tenant. He did not in fact pay it to her, however, but under agreement with her held it for investment, paying her the income. In 1922, he invested the fund in stock of the United States Fidelity & Guaranty Company, which increased in value very rapidly. Between May and August 1928 he sold 75 of the 80 shares, which he then held, for the sum of $34,677.23. $25,000 of this amount was placed in a savings account in the Real Estate Trust Company of Baltimore to the credit of defendant as trustee. $1,733.86 thereof was retained by him as commissions under agreement, as he says, with the life tenant. The remainder was invested in stocks and bonds and is not involved in these appeals.

In the Fall of 1929, the $25,000 deposited in the savings account, having first been loaned as call money in New York, was used in the purchase of certain stocks, which were bought in the name of defendant and included 300 shares of the Anaconda Copper Company. It is the testimony of defendant that this Anaconda stock was purchased as an investment of the trust fund after agreement with the life tenant to that effect, but that, when the stocks declined, she expressed dissatisfaction with the investment and he thereupon agreed to assume liability for the amount invested in them and pay interest thereon at 5%. Record evidence supports his testimony that the fund was used in the purchase of stocks upon which a loss was sustained and that, beginning in the Fall of 1929, he paid the life tenant interest on the $25,000 in regular quarterly installments.

The contention with respect to profits arises out of the fact that in February 1929 defendant, for the sum of $116,500, purchased 1,060 shares of the stock of the Monumental Life Insurance Company, which greatly increased in value thereafter. The contention is that the defendant mingled the trust property with his own and used it in the purchase or carrying of this stock from which he has realized great profit. It will be noted, however, that the stock of the insurance company was purchased and paid for by defendant before

the sale of the United States Fidelity & Guaranty stock, in which the trust fund was invested; and there is no evidence that any of the funds derived from the sale of the latter went into the purchase of insurance stock or that such funds were used to carry the investment or to pay off loans contracted in connection with the purchase.

The facts upon which the claim is made as to the conversion of five shares of the U. S. F. & G. stock are that, at the time of the sale of the 75 shares above referred to, certificates for the remaining five shares were issued in the name of defendant and that, as these grew in the subsequent history of the company to 35 shares, they also were issued in defendant's name. Defendant has accounted for all of these shares and the claim of conversion is made solely as a basis for requiring him to account for a high value, being the peak of current prices, that the stock attained between the time of the issuance of the shares in the name of defendant and the institution of suit. Defendant testifies, however, and his testimony is accepted by the judge below, that the issuance of the shares in his name as an individual, and not as trustee, was a mere matter of mistake to which he paid no attention, that he held and treated the shares as trust property and that he paid over to the life tenant regularly all income derived therefrom. No question is made but that he did pay over to the life tenant with regularity the income derived from this stock.

On the branch of the case relating to profits on purchases of insurance stock, there is no question as to the law upon which appellants rely. It is well settled that, if trust funds are mingled with personal funds of a trustee, the whole is impressed with a trust until separation of the trust property can be made, and that the trust is entitled to a proportionate part of the profits realized by the trustee in dealings with the fund in which the trust funds are mingled. And it is not necessary in asserting the rights of the cestui que trust that the trust funds be specifically traced. It is sufficient that they have been used by the trustee to augment a fund upon which profits have been realized. Knatchbull v. Hallett, 13 Ch.Div. 696; Central National Bank v. Connecticut Mutual Life Ins. Co., 104 U.S. 54, 26 L.Ed. 693; Schumacher v. Harriett, 4 Cir., 52 F.2d 817, 82 A.L.R. 1 and note; A. L. I. Restatement of Trusts, § 202; Drovers & Mechanics' Nat. Bank v. Roller,

85 Md. 495, 37 A. 30, 36 L.R.A. 767, 60 Am. St.Rep. 344; Englar v. Offutt, 70 Md. 78, 16 A. 497, 499, 14 Am.St.Rep. 332. The rule in Maryland, which is binding on us here, is well stated in the light of the controlling authorities in the case last cited, as follows: "In the case of [National] Bank v. Insurance Co., 104 U.S. 54 [26 L. Ed. 693], the supreme court, approving and following the decision of the English court of appeal in the matter of Hallett's estate, held that as long as trust property can be traced and followed, the property into which it has been converted remains subject to the trust; and, if a trustee or fiduciary mixes trust funds with his own, the whole will be treated as trust property, except so far as he may be able to distinguish what is his from that which belongs to the trust; that this doctrine applies, in every case of a trust relation, as well to money deposited in bank, and to the debt thereby created, as to every other description of property. Indeed, it may be stated as the clear result of the authorities, to use the language of Lord Justice Turner, in Pennell v. Deffell, 4 De Gex, M. & G. 372, 'that as between cestui que trust and trustee, and all parties claiming under the trustee otherwise than by purchase for valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or in its altered state, continues to be subject to or affected by the trust.' This is so, said Lord Ellenborough, in Taylor v. Plumer, 3 Maule & S. 562, repeated by Jessell, M. R., in the case of In re Hallett's Estate, supra, for the reason 'that the product of or substitute for the original thing still follows the nature of the thing itself, as long as it can be ascertained to be such, * * * and the right only ceases when the means of ascertainment fail.' The sole question, therefore, in every case where trust property is attempted to be traced, is, whether it can or cannot be identified, either in its original or altered form."

As pointed out by the District Judge, however, the trouble of the appellants is not with the law but with the facts. They fail to show that any of the trust funds went into any fund used for the purchase of insurance stock; and the evidence shows conclusively, we think, that the insurance stock was purchased and paid for with other funds at a time when the trust funds were invested in U. S. F. & G. stock.

Not only is this true, but the evidence shows conclusively that the trust funds, following the sale of the U. S. F. & G. stock, were invested by defendant in other stocks upon which a loss was sustained. In no aspect of the case, therefore, can it be said that the trustee used the trust funds in the purchase or carrying of the insurance stock. It is no answer to this to say that the trustee consented to assume personal liability for the fund, and became liable as upon a borrowing of the fund; for as a matter of fact he did not borrow the fund and did not use it in carrying the investment in insurance stock. He merely assumed the loss on the other stock purchased with trust funds and substituted his personal liability to the trust for the investment, while continuing personally to carry the investment. If profit had been made on the investment, defendant might have been liable therefor notwithstanding his agreement with the life tenant. But no profit was made. There is nothing to indicate that any part of the trust funds went into the purchase of insurance stock, or was used in carrying the investment therein or went to pay off loans contracted in connection therewith.

Appellants point to the fact that one block of Anaconda stock was sold at a profit of $1,000; and they contend that this profit belonged to the trust and should be accounted for as trust funds used and mingled by defendant. This argument, however, loses sight of the fact that upon the Anaconda investment as a whole a loss was sustained and no profit realized, and that, upon the expression of dissatisfaction by the life tenant, defendant assumed responsibility for the investment and substituted his personal liability therefor. Defendant would, of course, be liable for a profit realized upon the use of trust funds; but no profit was realized when the purchase of Anaconda shares for the trust is considered as an entirety, as it manifestly should be.

Appellants suggest, without very definite argument in support thereof, that a mingling with the funds used in the purchase or carrying of the insurance stock should be found with respect to the commission of $1,783.86 retained by the trustee and disallowed by the court; but there is nothing upon which to base this finding. The stock had already been purchased and paid for with other funds when the commission was retained by defendant, and there is nothing to show that the amount retained by him was used in any way to carry the investment or to retire the loans contracted in connection with the purchase.

As to the conversion of the 5 shares of U. S. F. & G. stock, since grown into 35 shares, there is nothing in the record which would justify our disturbing the findings of the lower court. Those findings may not be set aside "Unless clearly erroneous", and due regard must be given "to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Guilford Const. Co. v. Biggs, 4 Cir., 102 F.2d 46. Not only do we not regard the findings as clearly erroneous, but, to the contrary, think that they are clearly right. They are based upon evidence which is uncontradicted; and the fact that defendant paid the dividends on the stock in question to the life tenant so long as she lived corroborates his statement that he regarded and treated the shares as trust property and that the issuance of the certificates in his name as an individual, instead of as trustee, was a mere inadvertence. While defendant unquestionably should have had the shares issued to him as trustee, no loss resulted from the manner in which they were issued; and there is no reason to penalize him for an innocent mistake. Cf. A. L. I. Restatement of the Law of Trusts, § 179, Comment D. In re Guthrie's Estate, 320 Pa. 530, 182 A. 248, 103 A.L.R. 1186; Charter House Circle, K.D. v. Hartford Nat. Bank & Trust Co., 121 Conn. 558, 186 A. 543, 106 A.L.R. 260 and note at page 281; Kirby v. State, 51 Md. 383, 393; State v. Cheston, 51 Md. 352, 382.

For the reasons stated the judgment appealed from will be affirmed.

Affirmed.