PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 13-2116
_____

In Re: FIRSTPAY, INC.,

        Debtor.

------------------------

MICHAEL G. WOLFF, Trustee,

        Plaintiff – Appellant,

    v.

UNITED STATES OF AMERICA, IRS,

        Defendant - Appellee.

_____

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.    Peter J. Messitte, Senior District
Judge.  (8:12-cv-02952-PJM; BK-03-30102; AP-05-01695)

_____

Argued: September 17, 2014        Decided:  December 12, 2014

_____

Before MOTZ and DIAZ, Circuit Judges, and DAVIS, Senior Circuit
Judge.

_____

Affirmed by published opinion.   Senior Judge Davis wrote the
opinion, in which Judge Motz and Judge Diaz joined.

_____

**ARGUED:** Jeffrey Mitchell Orenstein, GOREN, WOLFF & ORENSTEIN,
LLC, Rockville, Maryland, for Appellant.   Michael J. Haungs,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellee.   **ON BRIEF:** Kathryn Keneally, Assistant Attorney

General, Ivan C. Dale, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

---

DAVIS, Senior Circuit Judge:

In this adversary bankruptcy proceeding, the trustee of the bankruptcy estate of a payroll processing firm seeks a judgment against the United States for an amount of payroll tax payments the firm made on behalf of its employer-clients to the Internal Revenue Service. After a series of decisions by the United States Bankruptcy Court for the District of Maryland and appeals to the U.S. District Court and to this Court, this appeal presents one issue: whether the trustee in bankruptcy may reclaim as property of the debtor the approximately $28 million transferred by the debtor to the IRS during the 90 days preceding the filing of the bankruptcy petition. We agree with the bankruptcy court and the district court that, as a matter of law, the debtor lacked an equitable interest in the funds paid over to the IRS, and therefore we affirm the judgment.

## I.

A detailed description of the facts and procedural history of this case is provided in the opinion we issued the last time this case came before us. See In re FirstPay, Inc. (In re FirstPay I), 391 F. App'x 259, 262–67 (4th Cir. 2010) (per curiam). Here, we provide only those facts and procedural history necessary to understand the issue presented in the instant appeal.

3

A.

FirstPay, Inc. ("FirstPay" or the "Debtor") provided payroll processing services pursuant to a Payroll Processing Agreement with each of its clients as well as tax reporting and depositing services to a number of its clients in accordance with a Tax Reporting Services Agreement ("Services Agreement"). Prior to each payroll date, FirstPay would withdraw funds from the client's checking account sufficient to cover the following amounts: (1) taxes for which the client was liable; (2) payment of the client's employees' wages; and (3) fees owed to FirstPay for its services. FirstPay deposited the withdrawn funds into a FirstPay account that the parties call the "tax account." The Services Agreement provided that FirstPay would hold the tax funds until taxes were due and then remit payments to taxing authorities.

Although FirstPay transferred a portion of the funds in the tax account to taxing authorities toward satisfying the obligations of some of its clients, not all of the funds in the tax account were ultimately used for this purpose. FirstPay transferred some of the funds from the tax account to an "operating account" used to pay its own business expenses, and another portion of the funds were transferred to an "exchange and reimbursement account" that was used for lavish personal expenditures by FirstPay's principals. The parties are unaware

4

of how FirstPay determined what portions of the funds in the tax account would be remitted to taxing authorities and what portions would be transferred to the operating account or to the exchange and reimbursement account.

FirstPay's fraudulent scheme continued without detection for several years, until the death of one of its principals in 2003. As a result of FirstPay's misappropriation of its clients' funds, a substantial portion of its clients' tax obligations went unpaid and now remain due and owing.

B.

Creditors filed an involuntary Chapter 7 bankruptcy petition against FirstPay in the U.S. Bankruptcy Court for the District of Maryland in May 2003. Appellant Michael Wolff was appointed trustee of the bankruptcy estate.

In 2005, the Trustee filed a nine-count complaint against the United States in the bankruptcy court seeking a declaratory judgment that the Government had no claim for taxes or penalties against FirstPay clients whose payroll taxes were paid to FirstPay but not ultimately remitted to the IRS (Count I); avoidance of FirstPay's payments of its clients' payroll taxes to the IRS as preferences under 11 U.S.C. § 547[1] and as

---

[1] Section 547(b) provides that a trustee in bankruptcy may avoid any transfer of an interest of the debtor in property—
(Continued)

5

fraudulent conveyances under 11 U.S.C. § 548 and Maryland law (Counts II through VIII); and turnover of avoided transfers under 11 U.S.C. § 550[2] (Count IX). The bankruptcy court granted the Government's motion for summary judgment as to the Trustee's declaratory judgment and preference claims and, after a one-day trial, entered judgment in favor of the Government on the fraudulent conveyance claims.

On appeal, the district court reversed as to the claim to avoid as preferences under § 547(b)(4)(A) the payments FirstPay made to the IRS within 90 days prior to the filing of the

---

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of [the Bankruptcy Code];
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b).

[2] A trustee in bankruptcy may recover, for the benefit of the estate, property transferred to the extent that the transfer is avoided under § 547 or § 548, or certain other sections of the Bankruptcy Code. 11 U.S.C. § 550(a).

bankruptcy petition. It is undisputed that, during that 90-day period, the IRS received from FirstPay, on behalf of its clients, a total of $27,816,992.50 in payroll tax payments, including $19,853,253.13 in taxes withheld from clients' employees' wages (i.e., "trust-fund taxes") and $7,963,739.37 in taxes owed by the client (i.e., "non-trust-fund taxes"). The district court's ruling was based in part on its determination that "the transfer of funds from the Debtor to the IRS . . . was a transfer of an interest of the Debtor in property" under § 547(b).

On remand, the bankruptcy court granted the Trustee's motion for summary judgment on the § 547(b)(4)(A) preference claim (Count II) and the related turnover claim (Count IX), entered judgment against the Government in the amount of $28 million plus interest, and denied the Government's subsequent motion to alter or amend the judgment. The Government appealed, and the district court affirmed the bankruptcy court in a summary order.

On appeal to this Court, we determined that the district court erred in saddling the Government with a concession that FirstPay's transfer of tax funds to the IRS on behalf of its clients was a transfer of FirstPay's own interest in property. In re FirstPay I, 391 F. App'x at 267–69. We remanded the matter with an instruction that the bankruptcy court reconsider the

7

remaining preference claim without regard to any such concession. Id. at 267. We also instructed the bankruptcy court to determine the merits of the Government's "ordinary course of business" defense under 11 U.S.C. § 547(c)(2), which the court had refused to consider as untimely. Id. at 270.

The parties stipulated to a set of facts for the bankruptcy court to consider on remand and filed new summary judgment motions. The bankruptcy court determined that the funds transferred by FirstPay to the IRS were not FirstPay's property and therefore not preferences but, if the payments were preferences, they would not be protected from avoidance under the "ordinary course of business" exception. In re FirstPay, Inc. (In re FirstPay II), BK-03-30102-PM, AP-05-1695-PM, 2012 WL 3778952 (Bankr. D. Md. Aug. 30, 2012). The court therefore granted summary judgment in favor of the Government, and the Trustee appealed. After the district court affirmed the bankruptcy court, the Trustee timely filed a notice of appeal to this Court.

## II.

Summary judgment is appropriate when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. In re French, 499 F.3d 345, 351–52 (4th Cir. 2007) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)); see also Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.

8

This court reviews de novo a bankruptcy court's award of summary judgment and a district court's affirmance thereof. Hager v. Gibson, 109 F.3d 201, 207 (4th Cir. 1997) (citing In re Ballard, 65 F.3d 367, 370 (4th Cir. 1995)).

III.

In furtherance of the policy against preferential treatment of creditors embodied by the Bankruptcy Code, a trustee in bankruptcy is permitted to avoid and recover certain payments made by the insolvent debtor preferentially for the benefit of some creditors prior to the filing of the bankruptcy petition. See 11 U.S.C. §§ 547(b), 550(a). These avoidable preferences include certain transfers made "on or within 90 days before the date of the filing of the petition[.]" Id. § 547(b)(4)(A). However, the trustee can only avoid a "transfer of an interest of the debtor in property[,]" id. § 547(b), as only the debtor's property would have been available for distribution among creditors in the absence of the transfer. See Begier v. I.R.S., 496 U.S. 53, 58 (1990). The sole issue in this appeal is whether the nearly $28 million FirstPay transferred to the IRS during the 90 days preceding the bankruptcy filing constituted "an interest of the debtor in property" under § 547(b).

In Begier, the Supreme Court looked to the scope of the postpetition "property of the estate" as defined in 11 U.S.C. § 541(d) for guidance in determining the scope of the debtor's

9

prepetition property under 11 U.S.C. § 547(b). See 496 U.S. at 58–59. Property in which the debtor holds only legal title and not an equitable interest is property of the debtor "only to the extent of the debtor's legal title, but not to the extent of any equitable interest in such property that the debtor does not hold." Id. at 59 (quoting 11 U.S.C. § 541(d)). "[T]he debtor does not own an equitable interest in property he holds in trust for another," and therefore any such trust property is not the debtor's for purposes of § 547(b). Id.

Because property interests are generally created and defined by state law, we look to state law to determine the nature of a debtor's interest in the property at issue. Butner v. United States, 440 U.S. 48, 54–55 (1979). "[A]bsent a countervailing federal interest," state law "determines whether a given property falls within [the] federal framework" of a bankruptcy estate. Am. Bankers Ins. Co. of Fla. v. Maness, 101 F.3d 358, 363 (4th Cir. 1996). Given that the agreements that govern the relationships between FirstPay and its clients provide that their terms are to be construed in accordance with Maryland law, the parties agree that Maryland law applies here. See Nat'l Glass, Inc. v. J.C. Penney Props., Inc., 650 A.2d 246, 248 (Md. 1994) ("[I]t is 'generally accepted that the parties to a contract may agree as to the law which will govern their

10

transaction[.]'") (quoting <u>Kronovet v. Lipchin</u>, 415 A.2d 1096, 1104 (Md. 1980)).

We hold that, under Maryland law, FirstPay held the $28 million in tax funds in an express trust and therefore lacked the equitable interest in the property necessary for its transfers to be avoidable under 11 U.S.C. § 547(b); accordingly, we affirm the judgment.[3]

A.

Under Maryland law, "[a] trust exists where the legal title to property is held by one or more persons, under an equitable obligation to convey, apply, or deal with such property for the benefit of other persons." <u>From the Heart Church Ministries, Inc. v. African Methodist Episcopal Zion Church</u>, 803 A.2d 548,

---

[3] Based on the terms of the relevant agreements, the bankruptcy court determined that FirstPay and its clients created a "resulting trust" to which the tax funds were subject, rather than an express trust. <u>In re FirstPay II</u>, 2012 WL 3778952, at *7. Under Maryland law, a resulting trust is a form of implied trust that "arises upon the presumed intention of the parties where the terms of the disposition or accompanying facts establish that beneficial interest is not to go with legal title." <u>Siemiesz v. Amend</u>, 206 A.2d 723, 725 (Md. 1965). A court sitting in equity may therefore declare a resulting trust where the circumstances surrounding a transfer of property "raise an inference, unrebutted by the facts, that the party making the transfer did not intend to give the transferee the beneficial interest in the property[.]" <u>Levin v. Sec. Fin. Ins. Corp.</u>, 230 A.2d 93, 98 (Md. 1967). Although we are persuaded that the terms of the relevant agreements are sufficient to create an express trust under Maryland law, we agree with the bankruptcy court that an intent to create a trust was, at minimum, implied by those terms.

566 (Md. 2002) (citing Milholland v. Whalen, 43 A. 43, 43–44 (Md. 1899)). The existence of a trust must be established by clear and convincing evidence. Kelley v. Kelley, 13 A.2d 529, 533 (Md. 1940).

"Express trusts are created by the direct and willful acts of the parties, by some writing, or deed, or words expressly evidencing the intention to create a trust." From the Heart Church Ministries, 803 A.2d at 567 (citing Levin v. Sec. Fin. Ins. Corp., 230 A.2d 93, 98 (Md. 1967)). The Maryland Court of Appeals has outlined three elements of a valid, express trust: "[f]irst, a definite subject-matter within the disposition of the settlor; second, a lawful, definite object to which the subject-matter is to be devoted; [and] third, clear and unequivocal words or acts devoting the subject-matter to the object of the trust." Levin, 230 A.2d at 97 (quoting Sieling v. Sieling, 135 A. 376, 381 (Md. 1926)) (internal quotation marks omitted).

All of the elements of a valid, express trust are satisfied in this case. The funds at issue comprise a definite subject matter within the disposition of the FirstPay client, transferred to FirstPay, and devoted to the lawful and definite object of paying the client's tax obligations by the clear and unequivocal terms of the agreements between FirstPay and the client. The Services Agreement states that "[c]lient's checking

12

account shall be debited for the aggregate total of all taxes and unemployment and credited to FIRSTPAY, Inc. a minimum of three days prior to payroll date"; and that "[t]hese tax funds will be held by FIRSTPAY, Inc. until such taxes are due, and will be submitted by FIRSTPAY, Inc. in accordance with local, state and federal regulations." In short, FirstPay was but an intermediary, and there was no intention that it would keep the funds or at any point use them for its own purposes or benefit. See In re Dameron, 155 F.3d 718, 722–23 (4th Cir. 1998) (holding that debtor held funds subject to express trust under Virginia law where contractual language and circumstances under which debtor received funds showed that parties intended debtor "to act merely as an intermediary[]" without any expectation that debtor would keep the funds or "develop any equitable interest in the funds[]").

Although the agreements here do not use the term "trust," "[w]hether or not a trust has been created in any given case is, in the last analysis, a question of intention[,]" and therefore, "[n]o particular words are necessary to create a trust[.]" Kozlowska v. Napierkowski, 170 A. 193, 195 (Md. 1934); see also Restatement (Third) of Trusts § 13 cmt. b (2003) ("[A] trust may be created without the settlor's use of words such as "trust" or "trustee[.]"). The language of the Services Agreement is sufficient to evidence a clear intent by the parties that

13

FirstPay would be obligated to handle the tax funds solely for the benefit of its clients and of the taxing authorities in satisfaction of the clients' tax obligations. Thus, FirstPay and each of its clients expressly created a trust, and the tax funds received and transferred by FirstPay pursuant to its obligations under the Services Agreement were trust property in which FirstPay held no equitable interest.

B.

The Trustee's argument that, upon transfer to FirstPay, the tax funds became a debt FirstPay owed to its clients and not trust property, is without merit.

The Trustee correctly asserts that a "debt is not a trust." Dunlop Sand & Gravel Corp. v. Hospelhorn, 191 A. 701, 706 (Md. 1937) (quoting Restatement (First) of Trusts § 12 (1935)); see also Restatement (Third) of Trusts § 5(k). When "one person pays money to another, it depends upon the manifested intention of the parties whether a trust or a debt is created." Levin, 230 A.2d at 96.

> If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created.

Dunlop Sand, 191 A. at 706 (quoting Restatement (First) of Trusts § 12); see also Restatement (Third) of Trusts § 5 cmt.

14

k. "Where the language of the parties does not clearly show their intention, all the circumstances must be considered in order to determine whether a trust or a debt was intended." Levin, 230 A.2d at 96.

The terms of the agreements between FirstPay and its clients clearly show that the parties did not intend for the amount of the tax funds transferred to FirstPay to be a debt. These agreements do not permit FirstPay's unrestricted use of the tax funds it received from its clients and in fact leave FirstPay with no discretion as to how it could handle the funds. FirstPay's freedom to use the funds is expressly limited to holding them until the clients' taxes are due and then remitting them to the taxing authorities. The parties to these agreements intended the tax funds to be used separately from other monies the clients transferred to FirstPay and used for the separate and limited purpose of satisfying the clients' tax obligations. It is clear that a trust was intended, and not a debt.

The Trustee points to a stipulation the parties entered into that each time FirstPay withdrew contractually authorized funds from a client's account, FirstPay became indebted to the client for the amount of tax funds included in that withdrawal (but not for the fees FirstPay was to retain for its services). In this regard, the parties have stipulated to what is essentially a legal conclusion, one that we cannot accept. See H

15

& R Block E. Enters., Inc. v. Raskin, 591 F.3d 718, 723 n.10 (4th Cir. 2010) ("[A] court is not required 'to accept what in effect [is] a stipulation on a question of law.'") (citation omitted). It is immaterial whether the parties knew the precise legal characteristics of a trust relationship and whether they knew that their intended relationship is called a "trust" under the law. Restatement (Third) of Trusts § 13 cmt. a. The terms of FirstPay's unambiguous agreements, which we interpret as a matter of law, see Gresham v. Lumbermen's Mut. Cas. Co., 404 F.3d 253, 260 (4th Cir. 2005), clearly establish that the tax funds were intended to be held by FirstPay only for payment of the clients' taxes and therefore constituted trust property.

## C.

The Trustee further argues that the funds FirstPay ultimately transferred to the IRS cannot be deemed trust property because they had been commingled with other funds and therefore cannot be effectively identified or traced. The Trustee points out that the money FirstPay obtained from each client's general operating account was first commingled in the client's account with funds intended and used for other purposes by the client; and after FirstPay received the money, those funds were again commingled in FirstPay's "tax account" with funds intended for payment of the client's and other clients' employees' wages, payment of FirstPay for its payroll services,

16

and payment of other clients' taxes. We are not persuaded that the commingling of funds that occurred in this case defeated creation of a trust.

The Trustee relies on the Maryland Court of Appeals decision in Levin v. Sec. Fin. Ins. Corp., 230 A.2d 93 (Md. 1967). Levin involved claims by two savings and loan associations to funds they had transferred to Security Financial Insurance Corp. ("Security Financial"), an insurance company that subsequently became insolvent. Id. at 94. Agreements between the parties provided that the associations would make payments into a "Trust Fund" held by Security Financial as "Trustee" in order "to better indemnify [the association's] savings account shareholders and to also increase the liquidity of said association and to set up a reserve fund for contingencies." Id. at 94–95.

After Security Financial became insolvent, the associations initiated proceedings to secure refunds of their monies, and the matter was referred to an auditor. Id. at 94. The auditor filed a report concluding that the associations were entitled to funds upon liquidation of the Trust Funds because Security Financial "treated these funds as trust funds . . . and segregated them from its general assets in all accounting," which allowed them to be traced. Id. at 95–96. Receivers of insolvent creditors of the insurance company excepted to the report, arguing that the

17

funds were general assets of Security Financial and therefore available for distribution to all creditors. Id. at 94.

The Maryland Court of Appeals affirmed the denial of the creditors' exceptions to the auditor's report based on the parties' intention that the funds would be subject to a trust. See id. at 96–99.[4] To be sure, the court specifically rejected the auditor's conclusion "that the mere segregation of the funds plus their traceability will permit an original owner of property to recover it from his insolvent transferee." Id. at 96. Nevertheless, the court stated that "[i]dentification of trust property, either in its original or altered form, is essential to its recovery by the cestui que trust." Id.[5]

---

[4] The court determined that the elements of an express trust were present except that the trust had an unlawful purpose but, given the parties' intent that Security Financial not hold an equitable interest in the funds, they had created a resulting trust. Id. at 98.

[5] Other cases cited by the Trustee are not directly applicable as they involved "constructive trusts," an equitable remedy imposed by Maryland courts "where property has been acquired by fraud, misrepresentation, or other improper method," or to otherwise "prevent the unjust enrichment of the holder of the property." Wimmer v. Wimmer, 414 A.2d 1254, 1258 (Md. 1980); see also Brown v. Coleman, 566 A.2d 1091, 1097 (Md. 1989). "[U]nlike either a resulting trust or an express trust, a constructive trust is remedial in character." Restatement (Third) of Trusts § 7 cmt. d (2003). Although lack of identification and traceability may prevent a court sitting in equity from imposing a constructive trust, the existence of an express trust or a resulting trust will depend only on the intentions of the parties.

18

We do not read Levin to have held, as the Trustee here suggests, that funds must be segregated in order to be traceable and subject to a trust. "[C]ourts have consistently rejected the notion that commingling of trust property, without more, is sufficient to defeat tracing." In re Dameron, 155 F.3d at 723–24 (4th Cir. 1998). In another case, the Maryland Court of Appeals held that "[i]t is not essential to a sufficient identification that the fund or property delivered to the trustee be traced in the precise or identical form in which it was received[.]" Cnty. Comm'rs of Frederick Cnty. v. Page, 164 A. 182, 190 (Md. 1933); see also MacBryde v. Burnett, 132 F.2d 898, 900 (4th Cir. 1942) (holding that, under Maryland law, "it is not necessary in asserting the rights of the cestui que trust that the trust funds be specifically traced").

A beneficiary's entitlement to a trust fund fails for insufficiency of identification "where it appears that the trust fund has been dissipated or so mingled and merged with the general assets of the insolvent estate as not to be separable or distinguishable therefrom[.]" Page, 167 A. at 191. However, "if a trustee or fiduciary mixes trust funds with his own, the whole will be treated as trust property, except so far as he may be able to distinguish what is his from that which belongs to the trust[.]" MacBryde, 132 F.2d at 900 (4th Cir. 1942) (quoting Englar v. Offutt, 16 A. 497, 499 (Md. 1889)). "So long as a

19

trust fund can be traced, the court will always attribute the ownership thereof to the cestui que trust, and will not allow the right to be defeated by the wrongful act of the trustee or fiduciary in mixing or confusing the trust fund with funds of his own, or even those of a third party." Englar, 16 A. at 499.

Thus, Maryland law does not countenance FirstPay's frustration of the Government's entitlement to the benefits of the trust by simply mingling the tax funds with other funds in the tax account. The commingling that occurred while the nearly $28 million in tax funds at issue were in FirstPay's possession was not so severe that it prevented the funds from fulfilling the purpose of the trust. The funds were not "mingled and merged" with FirstPay's general assets or "dissipated" but, rather, were received from FirstPay's clients, held in the tax account, and then transferred to the IRS as intended under the terms of FirstPay's agreements with its clients.[6] These tax funds can thus be traced and connected to the trust.

The Supreme Court examined an analogous situation involving a federal statutory trust and drew the same conclusions. See

---

[6] Funds withdrawn from the tax account and moved either to the "operating account" to pay FirstPay's operating expenses or to the "exchange and reimbursement account" to be squandered by FirstPay's principals are not at issue in this appeal. There is no contention here that those funds are identifiable or traceable as trust property.

Begier, 496 U.S. at 58-67. In Begier, a trustee in bankruptcy sought to avoid under § 547(b) tax payments the debtor airline, American International Airways, Inc. ("AIA"), had made to the IRS during the 90 days prior to the bankruptcy filing. Id. at 57. AIA was required to hold excise taxes collected from its customers and federal income taxes and Federal Insurance Contributions Act taxes withheld from its employees' wages in "a special fund in trust for the United States[.]" Id. at 55-56 (quoting 26 U.S.C. § 7501(a)). AIA's payments of these "trust-fund taxes" were made from both its general operating funds and from a separate bank account devoted to the withheld taxes. Id. at 56.

The Court determined that AIA's prepetition payment of payroll taxes from its general operating accounts was not a transfer of its own property but a transfer of trust property to which it held no equitable interest. See id. at 67. First, the Court rejected the trustee's argument that the trust was defeated by AIA's failure to segregate the tax funds from its general operating funds, noting that a requirement to segregate the funds "would mean that an employer could avoid the creation of a trust simply by refusing to segregate." Id. at 61.

Next, the Court turned to the issue of "whether the particular dollars that AIA paid to the IRS from its general operating accounts were 'property of the debtor[]'" under §

21

547(b). Id. at 62. Upon examination of legislative history of § 541, Justice Marshall stated that courts should permit "reasonable assumptions" in determining whether particular funds in the debtor's possession are tax funds held in trust for the Government in both prepetition and postpetition contexts. Id. at 65. One such reasonable assumption, based on the Court's examination of legislative history, was that "any voluntary prepetition payment of trust-fund taxes out of the debtor's assets is not a transfer of the debtor's property[]" but rather a transfer of funds held in trust for payment to the Government. Id. at 66–67.

Common-law principles provide a basis for a court to make similar reasonable assumptions in the context of a common-law trust. One such principle provides that if a trustee holds trust funds in an account where those funds are mingled with non-trust funds and then makes a withdrawal from the account for a trust purpose, the trustee will be deemed to have withdrawn trust funds. George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees § 926 (2d ed. rev. 1995). Another principle provides that if a trustee holds funds subject to one trust in an account mingled with funds subject to a separate trust and then makes a withdrawal for the express purpose or benefit of the first trust, the withdrawn funds will be deemed subject to the first trust and distinct from other trust funds. Id. § 927.

22

Under these principles, a court may presume that funds received, held, and conveyed by a trustee in accordance with the purpose and for the benefit of a trust, although commingled with funds not subject to that trust, are indeed funds subject to the trust. In the context of a preference avoidance claim, the burden rests with the party claiming ownership of the funds to rebut the presumption.

This position comports with both the Maryland law of trusts and the Bankruptcy Code. As previously stated, when a trustee mingles trust funds with its own funds, Maryland law places the burden on the trustee to distinguish its property from the trust property. MacBryde, 132 F.2d at 900; Englar, 16 A. at 499. Further, under 11 U.S.C. § 547(g), a bankruptcy trustee "who seeks to reclaim for the estate a pre-petition transfer . . . as a voidable preference bears the burden of demonstrating the presence of all elements of a preference, as established in § 547(b)." In re Virginia-Carolina Fin. Corp., 954 F.2d 193, 196 (4th Cir. 1992). The Trustee in the instant case, therefore, bears the burden of proving that the nearly $28 million he seeks to reclaim from the Government was FirstPay's own property and not the tax funds it held in trust for the benefit of its clients and the Government. The Trustee has not carried his burden here.

23

In sum, we hold that, in the absence of contrary proof, the law will presume that any funds received, held, and ultimately transferred by a trustee in accordance with the trust purpose are indeed trust funds. The burden rests with the trustee to rebut that presumption and establish that the funds so held and transferred, or any portion thereof, were not subject to a trust but were the trustee's own property prior to transfer. Here, the Trustee has not met this burden on behalf of FirstPay's estate with respect to the approximately $28 million at issue in this appeal. Summary judgment was therefore properly granted in favor of the Government on the Trustee's claim to recover these funds under § 547(b) and § 550(a).

## D.

It is regrettable that the employer-clients entrusted their money to a fraudster and, as a result of the fraudulent conduct and apparently not any action by the employers themselves, some of those employers are now better off than others; indeed some face the real prospect of double liability. As noted previously, FirstPay's remission of clients' tax funds to the IRS only satisfied the tax obligations of some of its clients while it only partially satisfied the obligations of others and a third set of clients had no tax payments applied on their behalf. We do not know how FirstPay decided which clients' taxes it would pay and which it would not, and we regret that some of the

24

clients remain liable to the IRS for tax payments they had entrusted funds to FirstPay to make. But the employers assumed the risk of FirstPay's mishandling of their funds when they selected the firm for vital payroll processing and tax reporting services.

We recognize that the Government has made efforts to minimize distress to those employers who remain liable for taxes by, for instance, waiving otherwise applicable penalties and other measures. We expect that responsible government officials will continue to proceed with sensitivity to the realities of this painful situation in which these businesses find themselves.

IV.

For the reasons set forth above, the judgment is

AFFIRMED.