**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-1722**

---

In re: STAR DEVELOPMENT GROUP, LLC,

      Debtor.

------------------------------

HOPKINS HOSPITALITY INVESTORS, LLC; MUKESH MAJMUDAR,

      Plaintiffs - Appellants,

v.

ZVI GUTTMAN,

      Trustee - Appellee.

---

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, Senior District Judge. (1:23–cv–02768–RDB)

---

Submitted: February 27, 2025            Decided: April 17, 2025

---

Before WILKINSON, NIEMEYER, and WYNN, Circuit Judges.

---

Affirmed by unpublished opinion. Judge Wynn wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

---

**ON BRIEF:** Michael P. Coyle, THE COYLE LAW GROUP, Columbia, Maryland, for Appellants. Jennifer L. Kneeland, Marguerite Lee DeVoll, WATT, TIEDER, HOFFAR &

FITZGERALD LLP, McLean, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Plaintiff Mukesh Majmudar is an owner and the managing member of Plaintiff Hopkins Hospitality Investors, LLC ("HHI") and bankruptcy debtor Star Development Group, LLC ("Debtor"). Majmudar and HHI seek to prevent the $1 million that they deposited into a bank account owned by Debtor from being considered part of the bankruptcy estate. They put forward three theories to explain why the money should not be included in the estate. The bankruptcy court and district court rejected each theory. We affirm.

I.

The facts are essentially undisputed. In 2013, HHI and "a separate, related entity, Hopkins Investors, LLC" (together, the "Hopkins Entities") began development of a hotel on property in Maryland owned by HHI. J.A. 181.[1] HHI retained Debtor, which is owned by Majmudar and his wife, as the development manager; Debtor, in turn, hired Constructure Management, Inc. ("Contractor") to serve as the general contractor. To fund the project, the Hopkins Entities obtained two multi-million-dollar loans from PeoplesBank (the "Bank"), one of which "was a bridge loan that matured after two years taken out pursuant to" a program through the Small Business Administration. J.A. 182.

In late 2015, as the hotel construction was nearing completion, disputes over payment arose between Contractor and the Hopkins Entities and Debtor. Soon thereafter, Contractor filed a complaint in state court seeking a mechanic's lien of over $1.7 million

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

against the Hopkins Entities. It also initiated arbitration proceedings against Debtor.[2]

In May 2016, "by agreement of" the Hopkins Entities, Majmudar, and Contractor, the state court entered a consent order establishing a mechanic's lien. J.A. 184. But the mechanic's lien posed a problem for the Hopkins Entities because the Small Business Administration would not refinance the bridge loan with the lien in place. So the Hopkins Entities sought to exercise their right, under the consent order, to file a $1 million bond to release the property from the lien. Hanover Insurance Co. ("Insurer") agreed to provide the Hopkins Entities with the necessary bond "on the condition that it received a $1 million irrevocable letter of credit as collateral for the bond." J.A. 49. The Bank agreed to issue HHI the letter of credit, "[b]ut they conditioned that agreement on receiving cash collateral." J.A. 51.

To satisfy the Bank's condition, Majmudar arranged to open a new account at the Bank and fund it with $1 million provided by himself and HHI (the "Account"). His original plan was to open the Account in HHI's name, but the Small Business Administration "indicated that it would not refinance the Bridge Loan if HHI was providing the $1 million for the irrevocable Line of Credit because it would involve, at least in part, money lent to HHI by Majmudar." J.A. 185. To avoid that "complication[]," Majmudar decided to open the Account in Debtor's name instead. J.A. 89. On June 17, 2016, Majmudar and his wife filed an account application in Debtor's name.

A week later, Debtor and the Bank executed an account agreement; a $1 million

---

[2] The Hopkins Entities were involved in the arbitration proceedings as third-party claimants.

4

promissory note in favor of the Bank; a $1 million business loan agreement; and an assignment of the Account in favor of the Bank as security for the promissory note pledging the Account as security for the letter of credit. The Bank issued the irrevocable letter of credit on the same date, after which Insurer issued the bond for the Hopkins Entities to post in state court. Majmudar and his wife deposited $353,315.41 into the Account, while HHI deposited $646,684.59, for a total of $1,000,000.

A year later, in June 2017, the arbitration panel considering the dispute between Contractor and Debtor issued Contractor an award of more than $1.7 million. Debtor filed a complaint in federal district court seeking to vacate the award. *See Star Dev. Grp., LLC v. Constructure Mgmt., Inc.*, No. 16-cv-1246, 2018 WL 1525703, at *4 (D. Md. Mar. 28, 2018). The district court confirmed the award, and Debtor appealed. *See Star Dev. Grp., LLC v. Darwin Nat'l Assurance Co.*, 813 F. App'x 76, 80 (4th Cir. 2020).

On May 24, 2019—while the arbitration appeal was still pending—Debtor filed a voluntary petition for Chapter 7 bankruptcy. *See* Chapter 7 Voluntary Petition Non-Individual, *In re Star Dev. Grp. LLC*, No. 1:19-bk-17075 (Bankr. D. Md. May 24, 2019), ECF No. 1. Attached to the petition was a Statement of Financial Affairs, which Majmudar completed under penalty of perjury. The Statement required that Majmudar "[l]ist any property that the debtor holds or controls that another entity owns" and instructed that he "[i]nclude any property borrowed from, being stored for, or held in trust." J.A. 268. Majmudar marked "None." *Id.* He repeated that representation in an amended Statement of Financial Affairs filed a few weeks later. And when he was asked under oath at the July 17 meeting of creditors whether Debtor held or controlled "any property that belongs to

5

any third parties," Majmudar confirmed that it did not. J.A. 306. He also testified that Debtor's only income over the prior two years had been the interest earned on the Account, and that Debtor had paid legal fees using that accrued interest.

In May 2020, this Court affirmed the 2017 arbitration award in favor of Contractor and against Debtor. *Star Dev. Grp.*, 813 F. App'x at 80. Accordingly, on October 6, 2020, the state court ordered that the $1 million bond be paid to Contractor. Insurer paid Contractor, and the Bank paid Insurer. However, due to the bankruptcy action, the $1 million remains in Debtor's Account, and the Bank has not been reimbursed. Instead, the Bank filed a proof of claim against Debtor's estate, pointing to the assignment as the basis of its claim.

In June 2020, Plaintiffs filed the instant adversary proceeding against Debtor's bankruptcy trustee, Zvi Guttman ("Trustee"), seeking a declaratory judgment that the Account is not part of Debtor's bankruptcy estate. *See* Complaint at 1, *Hopkins Hosp. Invs., LLC v. Guttman*, No. 1:20-ap-185 (Bankr. D. Md. June 12, 2020), ECF No. 1. Around the same time, Plaintiffs filed their own proofs of claim against the estate. Soon after that, Debtor filed another amended Statement of Financial Affairs and amended Schedule E/F in the bankruptcy case, again signed by Majmudar under penalty of perjury. This time, where the Statement of Financial Affairs asked him to list property that Debtor "held for another," Majmudar listed property worth $646,684.59 owned by HHI and $353,315.41 owned by himself—that is, the amounts of the payments Plaintiffs had made to the Account in June 2016. J.A. 158–59. He described both as related to the "Irrevocable Letter of Credit . . . on behalf of [HHI] effective for the benefit of [Insurer]." *Id.* The amended Schedule

6

E/F listed HHI and Majmudar each as unsecured creditors for "cash to secure a letter of credit for development and construction of" the hotel.[3] J.A. 448.

The parties cross-moved for summary judgment. In a declaration attached to Plaintiffs' motion, Majmudar asserted that the Account was "established for the purpose of securing" the letter of credit; that Debtor "had no discretion in how to use" the money in the Account; and that Majmudar and HHI "expected that if the funds [they] deposited into [Debtor's] Account became unnecessary, they would be returned to [Majmudar], individually, and HHI, and not remain with [Debtor]." J.A. 43–44. In a declaration attached to Plaintiffs' summary-judgment reply brief, Majmudar similarly stated that he and HHI did not transfer the $1 million to Debtor "for its unfettered use," but rather that Debtor "was only permitted to use these funds to satisfy its obligations related to the Letter of Credit and to ultimately pay [the Bank] pursuant to the Promissory Note executed as part of the Letter of Credit transaction." J.A. 187.

After an evidentiary hearing, the bankruptcy court denied Plaintiffs' motion for summary judgment and granted Trustee's. *In re Star Dev. Grp., LLC*, 660 B.R. 750, 752 (Bankr. D. Md. 2023). The district court affirmed. *Hopkins Hosp. Invs., LLC v. Guttman*, No. 23-cv-2768, 2024 WL 3252958, at *1 (D. Md. July 1, 2024). Plaintiffs timely appealed.

---

[3] The original, May 2019 Schedule E/F listed Majmudar as an unsecured creditor for "loan to business" in the amount of $609,721.43. J.A. 277. It did not indicate that the claim was "[c]ontingent," "[u]nliquidated," or "[d]isputed." *Id.* The amended Schedule E/F reduced the listed loan amount to $353,315.41, marked the claim as "[c]ontingent," and included the description noted above. J.A. 448.

7

II.

"In reviewing the judgment of a district court sitting in review of a bankruptcy court, we apply the same standard of review that was applied by the district court." *Copley v. United States*, 959 F.3d 118, 121 (4th Cir. 2020). Because the bankruptcy court ruled on summary judgment motions, the applicable standard of review is de novo. *See Hopkins Hosp. Invs.*, 2024 WL 3252958, at *2 (citing *Roberts v. Gestamp W. Va., LLC*, 45 F.4th 726, 732 (4th Cir. 2022)).

The issue in this case is whether the Account is properly included in Debtor's bankruptcy estate. The Bankruptcy Code defines a debtor's estate as being "comprised of" certain "property, wherever located and by whomever held." 11 U.S.C. § 541(a). This property includes, with a few statutorily defined exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* § 541(a)(1). Given that the Account is undisputedly owned by Debtor—Majmudar conceded as much in his deposition—it would typically fall within the estate. *E.g.*, *In re LandAmerica Fin. Grp.*, 412 B.R. 800, 809 (Bankr. E.D. Va. 2009) ("In line with the broad definition of 'property of the estate,' money held in a bank account in the name of a debtor is presumed to be property of the bankruptcy estate."); *see Sheehan v. Ash*, 889 F.3d 171, 173 (4th Cir. 2018) (including checking account in list of estate property).

Plaintiffs advance three theories for why the Account should nevertheless not be considered part of the estate. We agree with the bankruptcy court and district court that none are persuasive.

8

A.

First, Plaintiffs argue that the $1 million in the Account must be excluded from Debtor's estate because the funds were "earmarked" for the Bank. We have previously described earmarking "as an affirmative defense in bankruptcy" and a "judicially created exception" to a particular statute, 11 U.S.C. § 547, that no party contends applies here. *In re ESA Env't Specialists, Inc.*, 709 F.3d 388, 394, 396 (4th Cir. 2013). Plaintiffs do not cite any authority for asserting earmarking as an independent cause of action, or for applying earmarking (defensively or offensively) outside the § 547 context—despite our admonition that, "[a]s a judicially created exception to a statutory rule, the earmarking defense must be narrowly construed." *Id.* at 394 n.5. Nevertheless, because we agree with the bankruptcy and district courts that Plaintiffs' earmarking argument fails in any event, we join them in simply assuming arguendo that earmarking can be used in the manner Plaintiffs would like. *See In re Star Dev. Grp.*, 660 B.R. at 757 n.3; *Hopkins Hosp. Invs.*, 2024 WL 3252958, at *3 n.3.

"The earmarking defense applies '[w]hen a third person makes a loan to a debtor specifically to enable that debtor to satisfy the claim of a designated creditor.'" *In re ESA Env't Specialists*, 709 F.3d at 395 (quoting 5 *Collier on Bankruptcy* ¶ 547.03[2][a] (16th ed. 2011)). Plaintiffs' theory is that they made a loan to Debtor specifically to enable Debtor to satisfy the Bank's claim. But "[t]he earmarking doctrine applies only when the debtor borrows money from one creditor and the terms of that agreement require the debtor to use the loan proceeds to extinguish specific, designated, existing debt. Accordingly, the proper inquiry is . . . whether the debtor had the right to disburse the funds to whomever it

9

wished, or whether [the] disbursement was limited to a particular old creditor or creditors under the agreement with the new creditor." *Id.* at 396 (citations and internal quotation marks omitted).

There is no evidence of any agreement between Plaintiffs and Debtor to use the funds in a particular way. While Majmudar was the managing member of both Debtor and HHI, Debtor and HHI had previously recognized the importance of memorializing agreements between these separate entities in writing, as they executed a written contract when HHI hired Debtor as the development manager for the hotel. Yet, whatever Majmudar's subjective intentions at the time the Account was funded, no contemporaneous documentation supports an agreement between Plaintiffs and Debtor for Debtor to use the money solely for paying the Bank should the need arise.

To the contrary, the assignment Debtor executed with the Bank when opening the Account stated that Debtor was "the lawful owner of the Collateral free and clear of all loans, liens, encumbrances, and claims except as disclosed to and accepted by [the Bank] in writing." J.A. 238. While Debtor's tax returns and internal accounting records from the time the Account was opened until Debtor filed for bankruptcy recorded $1 million in loans from Plaintiffs to Debtor, those records treated the funds in the Account as Debtor's own property and the interest accrued on it as its income. Indeed, during that same period, Debtor paid legal fees from the Account using the accrued interest.

Further, "[e]ven were we to assume, *arguendo*, that [Plaintiffs] loaned [Debtor] the funds at issue for the specific purpose of [paying the Bank], [Debtor] did not use the loan proceeds to pay an existing debt." *In re ESA Env't Specialists*, 709 F.3d at 397. The Bank

10

has not been paid; the funds remain in the Account. Plaintiffs thus "failed to prove a fundamental element of earmarking—that the transferred funds paid an antecedent debt of the debtor." *Id.* at 396. Plaintiffs argue that, at the time Debtor filed for bankruptcy, the Bank "only had a contingent, unliquidated claim against" Debtor. Opening Br. at 23. But in that case, "the terms of" any agreement between Plaintiffs and Debtor cannot have "require[d] the debtor to use the loan proceeds *to extinguish specific, designated, existing debt*"—a prerequisite to applying earmarking. *In re ESA Env't Specialists*, 709 F.3d at 396 (emphasis added).

That is, even if there was an agreement between Plaintiffs and Debtor, it was at most for Debtor to use the money to pay the Bank *if that became necessary*. Plaintiffs cite no authority for extending the "narrow[]" earmarking doctrine to cover this sort of contingent debt. *Id.* at 394 n.5.

We therefore reject Plaintiffs' earmarking theory.

## B.

Second, Plaintiffs argue that the $1 million in the Account must be excluded from Debtor's estate because the funds are held in trust for the Bank.[4] They rely on the legal doctrine that funds held in trust for another constitute "[p]roperty in which the debtor holds . . . only legal title and not an equitable interest," and are considered property of the bankruptcy estate "only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11

---

[4] The operative complaint did not identify the beneficiary of the alleged trust. Plaintiffs have argued that the Bank is the beneficiary, so we will analyze that claim.

11

U.S.C. § 541(d); *see Begier v. Internal Revenue Serv.*, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"). "Because property interests are generally created and defined by state law, we look to state law to determine the nature of a debtor's interest in the property at issue," including for questions of trust formation. *In re FirstPay, Inc.*, 773 F.3d 583, 590 (4th Cir. 2014).

The parties agree Maryland law applies here. In Maryland, "[t]rusts arise by either clear and deliberate language or operation of law" and can be "express or implied." *From the Heart Church Ministries, Inc. v. Afr. Methodist Episcopal Zion Church*, 803 A.2d 548, 566 (Md. 2002). Regardless, "[t]he existence of a trust must be established by clear and convincing evidence." *In re FirstPay*, 773 F.3d at 590 (citing *Kelley v. Kelley*, 13 A.2d 529, 533 (Md. 1940)).

Such evidence is absent in this case. None of the agreements made between Debtor and the Bank when the Account was opened referenced a trust. And other evidence in the record affirmatively shows that a trust was *not* created.

For instance, in Debtor's first two Statements of Financial Affairs, filed in 2019, Majmudar asserted under penalty of perjury that Debtor "held" no property "in trust." J.A. 268, 289. The third Statement, filed in 2020 after this adversary proceeding commenced, asserted for the first time that Debtor "held" certain "property" for "another"—but it identified that property as the value of the irrevocable letter of credit, which it asserted was held for *Plaintiffs*. J.A. 158; *see* J.A. 159. The Statement again identified no "trust" of which the Bank was the beneficiary (or any other property held on behalf of the Bank).

12

Additionally, in his declaration, Majmudar stated that he and HHI "expected that if the funds [they] deposited into [Debtor's] Account became unnecessary, they would be returned to [him], individually, and HHI, and not remain with [Debtor]." J.A. 44. He said nothing about Debtor holding the funds in trust for the Bank.

There is thus no evidence that the funds in the Account were being held there in trust for the Bank. To the contrary, all evidence points against such a trust having been created.

## C.

Third, and finally, Plaintiffs argue that the $1 million in the Account must be excluded from Debtor's estate because the funds fell under the exception provided in 11 U.S.C. § 541(b)(1). Under that provision, "[p]roperty of the estate does not include . . . any power that the debtor may exercise solely for the benefit of an entity other than the debtor." Plaintiffs contend that Debtor held the funds for the benefit of HHI.[5]

Plaintiffs' argument under § 541(b)(1) is unclear. Courts have generally applied that provision to "powers" like a trust; the power of appointment under a trust; or an authority to sue on behalf of another. *E.g.*, *In re Cybermech, Inc.*, 13 F.3d 818, 820 (4th Cir. 1994) (trust); *In re Unicom Comput. Corp.*, 13 F.3d 321, 324 (9th Cir. 1994) (same); *In re Shurley*, 115 F.3d 333, 339 (5th Cir. 1997) (power of appointment); *Lubin v. Cincinnati*

---

[5] The operative complaint and one of Plaintiffs' briefs before the bankruptcy court asserted that the funds were held for the benefit of HHI *and/or the Bank*. But in other briefing before the bankruptcy court, briefing before the district court, and their Opening Brief before us, Plaintiffs only pursued this theory as to HHI. That is also the theory the two courts below reviewed. *See In re Star Dev. Grp.*, 660 B.R. at 757, 761; *Hopkins Hosp. Invs.*, 2024 WL 3252958, at *4. So we limit our discussion to that argument.

13

*Ins. Co.*, 677 F.3d 1039, 1042 (11th Cir. 2012) (authority to sue); *Guar. Residential Lending, Inc. v. Homestead Mortg. Co.*, 291 F. App'x 734, 739 (6th Cir. 2008) (same). To argue that § 541(b)(1) is applicable, Plaintiffs rely solely on a 1989 case from a divided panel of the Eleventh Circuit, *T & B Scottdale Contractors, Inc. v. United States*, 866 F.2d 1372 (11th Cir. 1989). But that case did not refer to § 541(b)(1) at all; rather, it referred more broadly to § 541, the statute defining the property of the bankruptcy estate.

We therefore understand Plaintiffs' argument to be that we should interpret § 541 in the manner employed by the Eleventh Circuit in *T & B Scottdale Contractors*. But, assuming arguendo that we would adopt that opinion's reasoning in a factually similar case, it is distinguishable from the present matter.

In *T & B Scottdale Contractors*, the City of Atlanta hired a contractor "to complete a water treatment project." *Id.* at 1373. The contract between the contractor and Atlanta allowed the contractor's subcontractors "to purchase materials through joint checking accounts controlled by" the contractor. *Id.* The contractor entered into a contract with a subcontractor under which the contractor would open a bank account in the subcontractor's name "for the sole purpose of paying for equipment" needed for the project. *Id.* Initially, this arrangement worked well: the subcontractor would send the contractor unpaid vendor invoices for materials; the contractor would deposit money into the account; and the subcontractor would forward a check to the vendor. *Id.* at 1373–74.

The trouble arose when the IRS "served notice of levy on the account" after the subcontractor failed to pay back taxes. *Id.* at 1374. At the time, the account contained a little over $135,000 that the contractor had deposited shortly before the IRS served its

14

notice. *Id.* The contractor filed a wrongful-levy action against the government. *Id.* The subcontractor then filed for bankruptcy, and the bankruptcy trustee intervened in the wrongful-levy action. *Id.* The district court concluded that the account's funds were part of the bankruptcy estate and thus rejected the contractor's claim of ownership. *Id.* at 1374, 1376.

The Eleventh Circuit reversed. It concluded that "[t]he legislative history of 11 U.S.C.A. § 541 makes it clear that funds in the debtor's possession held for a third-party do not become part of the estate in bankruptcy," citing to legislative history that specifically referred to property "held in a constructive trust for the person to whom the bill was owed." *Id.* at 1376 (quoting H.R. Rep. No. 95-595, at 368 (1977)). Because it was "undisputed that the funds deposited by [the contractor] in the account were meant for [the subcontractor's] materialmen"—given the contractor's contracts with both Atlanta and the subcontractor— the funds did not belong to the estate. *Id.*

This case is not like *T & B Scottdale Contractors*. First, Plaintiffs do not argue that the funds were held for a third party, like the materialmen in *T & B Scottdale Contractors*; they argue that the funds were being held *for the benefit of HHI* (one of the Plaintiffs). Second, it is not "undisputed that the funds deposited by [Plaintiffs] in the [A]ccount were meant for" HHI. *Id.* Unlike in *T & B Scottdale Contractors*, there are no written contracts making that intention plain. Plaintiffs themselves make the argument—in their first two arguments discussed above—that the funds were meant for the *Bank*. Furthermore, again, Debtor represented to the Bank that it was "the lawful owner of the Collateral free and clear of all loans, liens, encumbrances, and claims except as disclosed to and accepted by [the

15

Bank] in writing." J.A. 238. And again, Majmudar stated in his declaration that his expectation was that if the funds were not paid out to the Bank, he would personally receive back the part he had paid in—not that the money was *all* intended for HHI. Plaintiffs make no argument for why this Court should not only adopt the reasoning of *T & B Scottdale Contractors* but extend it far beyond its facts in this way.

III.

For the foregoing reasons, we affirm the district court's order affirming the bankruptcy court's order granting summary judgment to Trustee.

*AFFIRMED*